UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BONNIE ANN KRYGIER,

        Plaintiff,

        v.                                      **DECISION AND ORDER**
                                                        18-CV-762S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Bonnie Ann Krygier brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her applications with the Social Security Administration on November 26, 2014. Plaintiff alleged disability beginning November 20, 2011 (and has coverage through the last date insured of March 31, 2017), due to anxiety, depression, dysfunction of major joints including the knees, thoracic spine, and lumbar spine, and obesity. Plaintiff's application(s) were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On April 11, 2017, ALJ Mary Mattimore held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Jay Steinbrenner appeared and testified. (R.[1] at 31-78.) At the time of the hearing, Plaintiff was 54 years old at the date last insured (in March 2017), with a limited education, and worked as a press operator.

---

[1]Citations to the underlying administrative record are designated as "R."

4.     The ALJ considered the case *de novo* and, on June 7, 2017, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 13, 16.)  Plaintiff did not file a response.  This Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2] The ALJ's June 7, 2017, decision became the Commissioner's final decision on this matter on June 6, 2018, when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119, 126-127 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

3

> impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66, 70 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of November 20, 2011. (R. at 17.) At step two, the ALJ found that Plaintiff has the following severe impairment: anxiety, depression, dysfunction of major joints including the knees, thoracic spine, and lumbar spine, and obesity. Id. at 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 18-20.

4

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work,

> except she is able to stand and or walk for 2 to 3 hours in a workday but only for 30 minutes at any one time; can sit for 8 hours in a workday but requires a sit/stand option every 30 minutes while remaining on task; able to climb ramps, stairs, ropes, scaffolds, ladders, balance, stoop, kneel, crouch and crawl for 20 percent or less during the workday; can frequently handle, finger and feel bilaterally; requires freedom to use a cane occasionally to ambulate on all surfaces; no driving motor vehicles or riding in motorized vehicles; able to work in a workplace with no concentrated exposure to extreme cold, heat, wetness, humidity, fumes, dust, poor ventilation, smoke, and other pulmonary irritants; able to perform low stress jobs—that is can perform simple, routine tasks; can tolerate occasional changes in work processes, and settings, and can occasionally interact with coworkers, supervisors and the public.

(R. at 20.)

13. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 24.) At step five, the ALJ posed hypotheticals to the vocational expert and the expert opined that a hypothetical claimant like plaintiff (in RFC, age, education, and work experience and skills) could perform such jobs as small products assembler, molder, and electronic assembler, all light work. (R. at 25.) The ALJ therefore found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 25.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 26.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ erred in not giving controlling weight to two treating sources or stated reasons for not crediting the opinions of Drs. Violante and Dimopoulos. (No. 13-1 at 11-16.) She contends that the ALJ erred in holding that the entire record did not support plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. (Id. at 16-19.) Finally, she argues that the ALJ failed to consider her

severe impairments in combination. (Id. at 20-21.) Defendant responds that the ALJ's decision was supported in substantial evidence, that the ALJ properly analyzed the consistency of her subjective complaints. (No. 16-1 at10, 20-30.) Defendant argues that the ALJ properly weighed the medical opinions and evidence, that the ALJ considered the entire record as well as the combined effects of plaintiff's impairments. (Id. at 21-25, 25-28, 28-30.) For the reasons that follow, her argument is **accepted**.

15. On February 12, 2012, plaintiff had right total knee replacement surgery. (R. at 287.) Dr. Violante of Excelsior Orthopaedics performed knee replacement surgery on plaintiff on November 20, 2013. (R. at 721.) Dr. Violante then conducted follow up examinations. On October 2, 2014, plaintiff came for follow up examination complaining of pain in her left hip and right knee and stating that her hip went out on multiple times. She had a cortisone shot but it was minimally effective for her pain. She had an MRI and was referred for surgery. (R. at 715.) Dr. Violante had no further recommendation for treatment of the knee as no further surgical intervention was warranted. (R. at 716.).

16. Plaintiff saw Dr. Dimopoulos on May 24, 2016, who noted that she had MRI findings consistent with C5-6 and C6-7 moderate stenosis and L5-S1 transitional anatomy, degenerative disc disease and neuroforaminal stenosis. (R. at 762, 763.) Dr. Dimopoulos noted that plaintiff had back and neck pain that she called a 9 out of 10 and fluctuated between 7 and 10. (R. at 762.) The doctor noted that she ambulated with significant difficulty and a slow pace and a wide gait. (R. at 763.) Plaintiff's MRI revealed degenerative disc disease and stenosis at C5-6 and C6-7. (R. at 763.) She had a follow up appointment with Dr. Dimopoulos on June 15, 2016, and her clinical condition was unchanged. (R. at 765.) She tried physical therapy, medication, injections, and

chiropractic manipulation "without significant help." (R. at 766.) When examined, plaintiff was not in acute distress but still ambulated with a slow pace and a wide gait. (R. at 766.) Dr. Dimopoulos concluded that plaintiff was not improving in her clinical condition. (R. at 766.)

17.  Dr. Dimopoulos saw plaintiff again on October 17, 2016, and plaintiff was in mild distress during this examination and had cervical myelopathy with MRI revealing degenerative disc disease with a nerve sheath tumor and complaints of back pain. (R. at 770-71.) She had what the doctor termed "significant difficulty with her daily activities." (R. at 771.)

18.  Dr. Violante saw plaintiff again on January 26, 2017, on her complaints of right knee pain. (R. at 718.) The doctor diagnosed plaintiff with osteoarthritis of the knee and post-operative infection. (R. at 718.) Dr. Violante advised plaintiff to obtain a CT scan, noting plaintiff was ambulatory but with weakness and instability of her right extremity which requires stabilization from this semi-rigid orthosis to improve her function. (R. at 719-20.) Plaintiff had a scan on that date and her right knee showed no abnormality and no signs of infection. (R. at 724.) On February 10, 2017, plaintiff continued to complain of knee pain. (R. at 721.) Dr. Violante found plaintiff had diminished strength in her right knee and no instability in both knees. (R. at 722.) A musculoskeletal sonogram was performed, and plaintiff's quadriceps were intact but moderately to severely atrophied. (R. at 722, 725.)

19.  The ALJ, however, noted that plaintiff had normal range of motion, intact sensation, normal reflexes, citing without attribution (among other medical records) the findings of Drs. Violante and Dimopoulos. (R. at 21, 22, 720, 763.) The ALJ also

considered that another of plaintiff's doctors in December 2012 concluded that she could return to work after her knee surgery. (R. at 23, 387, 389.) This opinion was rendered prior to plaintiff's November 2013 knee surgery (R. at 721, 21); the ALJ acknowledged plaintiff's subsequent knee arthroscope and replacement surgery after the December 2012 finding that she could return to work (R. at 21).

20. The ALJ noted that no provider has given restrictions in excess of those found in the RFC. (R. at 23.)

21. The ALJ cited to Dr. Violante's January 26, 2017, opinion, without naming the doctor or discussing that plaintiff was ambulatory but had weakness and instability in her right extremity, requiring stabilization "from this semi-rigid orthosis to improve her function" and that the doctor ordered a knee brace for her right knee. (R. at 720.)

22. The ALJ also cited Dr. Dimopoulos's May 2016 examination, again without naming the doctor or discussing the MRI results or the doctor's observations of plaintiff's gait. (R. at 763.)

23. The ALJ stated that when examined by the consultative examiner, Dr. Hongbiao Liu, plaintiff had no acute distress and demonstrated a full range of motion in her cervical spine, upper extremities, hips, and ankles, with normal reflexes, overall strength in her upper and lower extremities, and no atrophy. (R. at 22, 537-39.) Thus, Dr. Liu opined that plaintiff had only "moderate limitations for prolonged walking, bending, and kneeling and the need to avoid respiratory irritants." (R. at 22, 539.)

24. Although she gave great weight to the opinion of consultative examiner Dr. Liu (R. at 23), plaintiff claims (Docket No. 13 at 14) that the ALJ did not note Dr. Liu's finding that plaintiff had diminished range of motion in her lower back (R. at 538). The

ALJ did note reduced range of motion in the lumbar spine and right knee (R. at 22) but dismissed this in finding that plaintiff otherwise was not in acute distress (R. at 22).

25. Plaintiff's claims here predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. § 404.1527 (2017), such as this one. On March 27, 2017, the current version of the SSA regulations eliminates the treating physician's rule for applications filed on or after that date, 20 C.F.R. § 404.1520c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013).

26. The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

27. The ALJ also noted that plaintiff reported that in July 2014 she danced at a wedding "further suggesting that the claimant's gait difficulties are not as severe as

9

alleged." (R. at 22, 462.)  Plaintiff was in the hospital following that dancing claiming that her hip had popped out.  (R. at 462.)

28. The ALJ failed in her obligation to give controlling weight to the opinions of treating physicians Violante and Dimopoulos, first by not acknowledging them in the record and then not providing reasons why their findings were disregarded.

29. Defendant argues that it is not per se error in this Circuit for an ALJ to determine the RFC without a medical opinion (No. 16-1 at 20-21, citing Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013)).  Defendant points out that the treating physicians cited by plaintiff did not render medical opinions as to the severity of her impairments (id. at 21-22).

30. Drs. Violante and Dimopoulos did not render medical opinions as to the severity of plaintiff's knee and back conditions, they did provide their observations that provided enough material for the ALJ to consider disability or minimally to seek further information from the doctors as to their opinion on severity.

31. If this record is incomplete, the ALJ has a statutory duty to "make every reasonable effort to obtain from the individual's treat physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from another source on a consultative basis," 42 U.S.C. § 423(d)(5)(B).  "Even when a claimant is represented by counsel, it is well-established rule in our circuit 'that the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding,'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009)

(internal quotations marks omitted); Szefler v. Berryhill, No. 16CV774, 2018 WL 6831156, at *6-7 (W.D.N.Y. Dec. 28, 2018) (Vilardo, J.); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record").  Where there is insufficient information, the ALJ is obligated to seek further information from the treating physicians, see Ross v. Colvin, No. 14CV444, 2015 WL 4891054, at *4-5 (W.D.N.Y. Aug. 17, 2015) (Skretny, J.).

32. The ALJ also did not make an express finding that the findings of Drs. Violante and Dimopoulos were not well supported by clinical evidence, exceeding the error found in the rejection of the treating physician's findings in Garcia v. Barnhart, No. 01 Civ. 8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003). (See No. 13-1 at 14-15.)

33. Failure to provide good reasons for rejecting these findings requires remand, Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999), as **is so ordered** here.

34. Given remand on the consideration of treating physicians' findings, this Court need not address plaintiff's other grounds, that the ALJ improperly considered plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms and that the ALJ failed to consider her impairments in combination.  Both issues may be addressed when the ALJ reconsiders the findings of the treating physicians.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that the case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      April 24, 2020
            Buffalo, New York


                                        <u>s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        United States District Judge